331 So.2d 723

**STATE of Alabama**

**v.**

**INFANTS DIAPER SERVICE, INC.,**
a corporation.

**Civ. 710.**

Court of Civil Appeals of Alabama.

April 28, 1976.

Herbert I. Burson, Jr., Acting Counsel, Dept. of Revenue, and Asst. Atty. Gen., and B. Frank Loeb, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for appellant.

Long & Reynolds and James M. Wright, Jr., Montgomery, for appellee.

**BRADLEY, Judge.**

This case originated with an appeal to the Circuit Court of Montgomery County of a final tax assessment entered by the State of Alabama. The circuit court rendered a decree in favor of the taxpayer, setting aside the assessment. The State has appealed that decree.

The tax involved is levied under Title 51, Section 629(22), Code of Alabama 1940, Recompiled 1958, which states in pertinent part:

> "In addition to all other taxes now imposed by law, there is hereby levied and shall be collected as herein provided a privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting tangible personal property at the rate of 4% of the gross proceeds derived by the lessor from the lease or rental of tangible personal property; . . . *provided further, that the privilege or license tax*

> *on each person or firm engaging or continuing within this state in the business of the leasing and rental of linens and garments, shall be at the rate of 2% of the gross proceeds derived by the lessor from the lease or rental of such linens and garments."* (Emphasis supplied.)

The taxpayer here is regularly engaged in the linen supply rental business. Two items the taxpayer regularly rents are "dry mopheads" and "walk-off mats," both cloth products. The State's assessment taxed the rental of these items at four percent, rather than at the reduced rate of two percent applicable to the rental of linens. The State contends that these two items are not linens.

The decree of the trial court was based on oral testimony heard without a jury on September 8, 1975. After consideration of the evidence, the trial court ruled that dry mopheads and walk-off mats are linens as contemplated by the statute. The correctness of this ruling is the sole question on appeal.

The term "linens" is not defined in Section 629(22), *supra*; and the generally accepted rule is that, in the absence of statutory definition, the commonly acquired definition of such term must be applied, *Republic Steel Corp. v. Horn*, 268 Ala. 279, 105 So.2d 446. The trial court's ruling as to whether or not the items in dispute before it fit into the definition must be affirmed or reversed according to its support in the evidence of record, *State v. Wallis*, 48 Ala.App. 652, 267 So.2d 172.

In the present case the evidence tended to show that "linens" are no longer considered to be only cloth products made of flax, but may be cotton or synthetic, as are the mopheads and mats in this case. It is the analogy to products which in earlier times were flax-derived that determines whether a product today is considered "linen." The list of products so considered numbers in the hundreds. There is but a

vague distinction between what is and what is not "linen" in today's usage.

The trial judge had before him samples of the mopheads and mats to examine. This physical evidence was supplemented by testimony to the effect that the products are primarily made from cotton cloth, and both are used for purposes of maintaining the cleanliness of floors.

Additionally, there was testimony to the effect that the State does not object to taxing *"wet* mopheads" and *"bath* mats" as linens at the two percent rate. According to one witness there is no difference, other than the use to which they are put by the customer, between these two products and the dry mopheads and walk-off mats which the State now denies to be linens.

The dry mopheads and walk-off mats are marketed exactly like undisputedly "linen" products: clean ones are delivered to a customer, who uses them until they become soiled; the linen service then picks up the dirty ones and exchanges a clean set for them; the service launders the dirty products and then re-delivers them to the customer in exchange for the now-soiled second set, which are then washed and re-delivered, etc. A fee is charged to the customer for this entire cycle of service. Labor costs are the largest part of the fee.

Although the marketing techniques employed by appellees would not be controlling, it is of some persuasive value, and supports the tendency of the evidence to show that the products in question are quite similar in characteristics to many "linen" products.

With this state of the record before us, we cannot say that the findings of the trial court are unsupported by the evidence. The decree below is therefore affirmed.

AFFIRMED.

WRIGHT, P. J., and HOLMES, J., concur.